We move to the last case today, U.S. v. Conley. Mr. Owens, I represent Ken Conley. As this Court is aware, Ken was indicted in federal court for bank robbery. He was ordered detained. He eventually pleaded guilty to the bank robbery. Before he could be sentenced, he broke out of the MCC with another inmate. He was apprehended. He was indicted for escape. He was then sentenced for the bank robbery case. In the bank robbery sentencing, the same conduct involving the escape was used to enhance his sentence. Thereafter, in this case, he pleaded guilty to escape and was again sentenced, this time to a term of 41 months consecutive to the maximum term of 20 years he received for the bank robbery. These circumstances, I believe, suggest that the sentence case was not reasonable and therefore should be vacated and remanded for a new sentencing hearing. Specifically, in Witt v. United States, the Supreme Court suggested under these circumstances, the total sentence that would should control what the reasonable sentence is. I've been arguing from day one in the district court that the sentence case wasn't fair, that there's a piling on, that the sentence doesn't promote respect for the law. It's greater than necessary. In short, it's not fair. The circumstances here brought to mind what Justice Scalia said. Well, how about escape? Pardon me? How about its effect on escape? Well, the effect on escape was the 41 months consecutive. You get a free ride the second time around if you do it the way you want to do it. I don't think so, Judge. Well, what's the penalty then if he runs concurrently and he escapes? Well, I guess at this point when I'm addressing the fact that he got a consecutive sentence, there could have been a middle ground. There could have been a partially consecutive or partially concurrent sentence that took into account the effect the escape had in the original case. For example, at the time Connolly pleaded guilty to the bank robbery, the parties agreed he was facing a guideline range of 168 to 210. The escape in this case, based on that 240-month sentence, would seem to have factored in to at least 30 months of the bank robbery sentence he got in that case. That should have been taken into account more specifically by the judge in this case. Well, there's no doubt Judge Feinerman knew about it, right? Judge Feinerman knew about it, yes. Okay. He was very... Let me, if I could, take you back to a point you made a moment ago about if the cases, if the two sentences had been imposed at the same time by the same judge. Right. How would the... I haven't seen this. I haven't tried to do it myself. I'm not confident I can freelance or any more on guideline calculations, but how would that have worked if the two had been put together? Would they have been combined? What would the guidelines have looked like? Well, I think the way I would approach it is that, as Judge Feinerman pointed out, he said, he asked one of the questions, he said, well, didn't Judge Deryagin say, if he could have given your guy more than 240 months, he certainly would have considered that. So, let's take it as if that, as if Judge Deryagin were imposing sentence in both cases. He gives currently the high end, 210 months on the bank robbery and imposes a maximum of 5%... No, no, no. The 210 months assumes acceptance or responsibility and no obstruction, right? Right. So, let's suppose the two cases are combined into one. Again, no acceptance, obstruction counts. What happens? I think he's looking at max 270. And he got 281? 281. So, I would say, well, you know, to somebody who's doing as much time as Mr. Connolly, it's a significant period of time. Granted, but if you're arguing it's unreasonable under 3553A, if the guidelines combined would have put it at 270, that's... That would have been the maximum. In fact, because this was a garden variety bank robbery, the reality is he wasn't looking at 210. He wasn't looking at 270 in this case, but for that escape. He was looking at something, I think, substantially less. If you look at the underlying bank robbery itself, for a Category 6 offender, it carried a type guideline range of 137 months. 110 to 137 months. Sure, but you've also got, I mean, a stunning criminal history here, right? I mean, you don't have to adopt my adjective, but this is extraordinary. 27 criminal history points. 24 when he was sentenced for the bank robbery. Right. I mean, he's, with many batteries armed robberies, unlawful use of a weapon, use of force against police officers repeatedly. And these are things that Judge Feiderman took into account. I mean, it's on the record. Well, he couldn't even wait until he got sentenced before he tried to get out, before he got out. On the underlying case? Yeah. Well, there's probably an interesting story there. And one of the things in this case, incidentally, is that Connolly did have a story to tell. In pleading guilty to the escape charge, he gave up valuable rights relating to his right to a trial. I mean, I'll tell you anecdotally that I've been approached by a number of people who know I've represented Mr. Connolly throughout here, and their reactions to what he did, that escape, might surprise those of us in the justice system who see this as a serious offense. I mean, he gets some grudging respect from people on the street for this kind of thing. It's a very bizarre reaction. It's almost like one of these old westerns. And it's looked at in somewhat of a romantic way. You've got to admire the nerve. What I'm saying is that Mr. Connolly, in his mind, giving up his right, I don't think he'll lose going to trial, frankly, between the sentence he got, the total sentence he got, and the maximum potential sentence he was looking at. How long was he out before he was killed? Two weeks. Two weeks? Two weeks. What about his co-escapee? I think Mr. Banks was apprehended relatively quickly. You know, that same next day or something? Maybe, yeah. But I do think, in his case, the 11 months is perhaps more significant than Your Honor seems to suggest it might be in terms of the 3553 analysis. And here's the other thing. Vacating sentence gives the judge a chance to go back and re-evaluate, as well, the consecutive versus concurrent guideline, which is one of the other things. I thought he kind of hashed that out himself pretty neatly. Well, yeah. And to the extent I agree with him, you know, I'll tell you, I was wrong. And I'd like to take a minute and just tell you why I was wrong. And I was wrong because when I went back in this appeal, there are two things. This Court has said that there are two steps in this process. First was the prior conduct, the bank robbery, relevant conduct. Now, the argument I told the judge that it could be relevant conduct and it wasn't in this case, and that was based on the pre-sentence report. But certainly the pre-sentence report did not treat it as relevant conduct. It assigned no special characteristics to the offense. The probation officer relied on the base offense level for escape. And so that statement was accurate. Where I went amiss is when I started telling the judge how the effect of the career criminal raised the offense level in this case from 13 to 17, which is the second piece of nonia, then the judge said, well, wait a minute, he's got these two other convictions that also trigger career criminal. You would concede that. And, in fact, I did at that time. But I realized how wrong I was when I went back and re-read your decision in nonia because what you say is that the judge can't ignore relevant conduct. And if the bank robbery was relevant conduct, then he had to take it into account. And what you have, essentially, is a situation that was described in nonia of alternative sentencing scenarios. And I think that's a problem. I think that the bank robbery triggered the career criminal just as the other two offenses did, and we shouldn't have allowed the district judge to adopt this alternative sentencing scenario to get around the fact that the bank robbery, as a trigger for the career criminal, does raise the offense level from 13 to 17. But it doesn't raise it under Chapters 2 or 3. It does not. So 5G 1.3b does not apply. I'm not so sure I agree with that. You have to have the other sentence has to have been for a conviction that was the basis for an increase in the offense level for the instant offense, the escape, under Chapter 2 or Chapter 3, not the career criminal enhancements under Chapter 4. Except that when you go to the guideline for relevant conduct of assault, it cross-references the Chapter 4 adjustments for the criminal history piece. In my view, I think that's one of the questions, one of the important questions in the case, is whether the career criminal piece can, in this context, be used to enhance the offense level. And so to the extent I agree with Judge Feynman below, I think I was wrong. I asked the court to at least look at that question. I think it's an important question. And I'll tell you, I've had trouble finding the law to the contrary in my research, whether it's in this circuit. I think there's one case in 2008 where the court said, we don't decide that question today in this circuit. I'm assuming all my papers here have been misplaced. But the point is, I think there's a relative dearth of case law that says that the career criminal piece can't be used in this kind of unique circumstance to increase the offense level for purposes of applying 5G 1.3b. I see my time's up. If the court doesn't have any further questions, I guess I've gone right through my rebuttal time, too. I'll give you a minute to reply. Thanks very much. Mr. Owens? May it please the court, counsel. My name is Derek Owens, and I represent the United States. The district court in this case correctly determined that it had discretion to order a consecutive or concurrent or partially concurrent sentence in the escape offense under subsection C of 5G 1.3. The court properly exercised that discretion in ordering the defendant's escape conviction sentence to run consecutive to his bank robbery sentence. The guideline section requiring a concurrent sentence did not apply because, in this case, the bank robbery conviction was not relevant conduct to the escape offense, and that did not increase the offense level for the escape offense. And would it eliminate any deterrent for somebody who's already in anyway if he did it before he was sentenced? That's correct, Your Honor, and that's one thing that the district court cited in imposing the 41-month sentence, which was within the guideline range, and examining the 3553 factors, that 41 months within guideline sentence was reasonable to impose, and the court went through the 3553 factors, particularly looking at the offensive conviction, the escape itself, that it was a serious and carefully planned criminal offense, that it put the defendant at risk to destroy part of the prison facility, and it led to a two-week manhunt for the defendant, tying up local law enforcement resources during that holiday period. The court also noted that the offense was not a momentary lapse of judgment, but it was, again, meticulously planned and carefully executed. The court looked at the defendant's criminal history. I won't go through the convictions again, but it's a long, decades-long criminal history of serious, violent offenses. Had he been in the MCC before? Had he been in the MCC before? Not prior to being arrested for the bank robbery. That is correct. He just didn't like it, though. Apparently not, Your Honor. Where is he in custody now? He is in federal custody. I believe he's at a facility in Colorado. Supermax? I believe so, Your Honor. Well, you can earn your way in. We'll see. Again, the court went through the aspects of 3553, his disrespect for legal authority, the deterrence that was needed, and also, again, to protect the public from further crimes of the defendant. Unless the court has any more questions, I would ask that you affirm the sentence imposed by the district court. Thank you. Thank you, counsel. Do you want to use your minute? Do you have a minute? Clear your throat anyway, you know. Let me just respond to something Mr. Owens said about the, at least on the relevant conduct piece. Let me point out that the indictment in the escape case specifically references the escape from custody while after filing his arresting conviction on a felony charge of bank robbery, which I suggest under NANIA the fact that it was considered as part of the charge makes it relevant conduct. In his plea agreement in the escape case, the factual basis specifically references the fact that it was an arresting conviction on a bank robbery charge, again, indicia of its relevance to the escape sentence. In the government's version of the offense, they specifically identify in part one the offense of conviction and relevant conduct as including the bank robbery case. And, of course, you've got the prior orders from the other case that detained him on the basis of the bank robbery. So I think on the one prong, whether the bank robbery's relevant conduct for purposes of 5G.1.3b the answer is yes, based on the record. Just to answer the court's question, yes, Mr. Connolly is at the Supermax in Colorado. And that was one of the factors we argued to Judge Finerman, which presumably he considered that the time here is not only long, but it's particularly harsh. Well, what would you expect, however, once you've made an escape? You put him in a place where theoretically you can't escape. Judge, I appreciate that. Thank you for your time. Mr. Ravitz, you took this by appointment, did you? Of course. You have the thanks of the court for your very ingenious and strong argument in your client's behalf. Thank you very much. The case will be taken under advisement, and thanks to both counsel. And the court will be in recess.